# No. 21-4299

═══════════════════════════════════════

# United States Court of Appeals for the Fourth Circuit

──────────

**UNITED STATES OF AMERICA,**
*Appellee,*

***v.***

**AUSTIN KYLE LEE,**
*Appellant.*

──────────

*On Appeal from the United States District Court
for the Eastern District of North Carolina*

═══════════════════════════════════════

## *CORRECTED*
## RESPONSE BRIEF OF THE UNITED STATES

═══════════════════════════════════════

DANIEL P. BUBAR
*Attorney for the United States
Acting under Authority Conferred
By 28 U.S.C. § 515*

BY:    DAVID A. BRAGDON
LUCY PARTAIN BROWN
*Assistant United States Attorneys*

150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone:  (919) 856-4530

*Attorneys for Appellee*

# TABLE OF CONTENTS

Table of Authorities ........................................................................ ii

Statement of Jurisdiction ................................................................ 1

Statement of Issue .......................................................................... 2

Statement of Facts........................................................................... 3

Summary of Argument.................................................................. 16

Argument ...................................................................................... 17

I.    **The district court committed harmless error in refusing to send the § 851 fact questions to the jury because the evidence at trial that Defendant met the requirements was overwhelming and the ultimate sentence was driven by the guidelines.**

    A.    Standard of Review.................................................... 17

    B.    Discussion of Issue. ................................................... 17

        1.    The government proved each element of § 851 beyond a reasonable doubt. ............................. 18

        2.    The guidelines range, not the enhanced penalties, drove Defendant's sentence............................. 22

II.   *Almendarez-Torres* **is still good law.**

Conclusion .................................................................................... 25

Certificate of Compliance

# TABLE OF AUTHORITIES

## Cases

*Almendarez-Torres v. United States,*
   523 U.S. 224 (1998) ................................................................ 24

*Delaware v. Van Arsdall,*
   475 U.S. 673 (1986) ................................................................ 18

*Neder v. United States,*
   527 U.S. 1 (1999) .......................................................... passim

*United States v. Bell,*
   884 F.3d 500 (4th Cir. 2018) .................................................. 22

*United States v. Hargrove,*
   701 F.3d 156 (4th Cir. 2012) .................................................. 22

*United States v. Kivanc,*
   714 F.3d 782 (4th Cir. 2013) .................................................. 17

*United States v. Sanders,*
   909 F.3d 895 (7th Cir. 2018) .................................................. 12

## Statutes

18 U.S.C. § 922(g) ...................................................................... 3

18 U.S.C. § 924 .......................................................................... 3

18 U.S.C. § 924(c) ...................................................................... 14

18 U.S.C. § 924(c)(1)(A) ............................................................ 3

18 U.S.C. § 924(e)(2)(a)(ii) ........................................................ 12

18 U.S.C. § 3231 ........................................................................ 1

18 U.S.C. § 3553(a) ................................................................... 15

18 U.S.C. § 3742(a) ..................................................................... 1

21 U.S.C. § 841(a)(1) ................................................................... 3

21 U.S.C. § 841(b)(1)(A) .............................................. 6, 12, 13, 22

21 U.S.C. § 841(b)(1)(B) .............................................. 6, 12, 13, 22

21 U.S.C. § 841(b)(1)(C)................................................... 14, 23

21 U.S.C. § 846.............................................................................. 3

21 U.S.C. § 851 ............................................................... passim

28 U.S.C. § 1291 ........................................................................... 1

N.Y. Penal Law § 220.41 ........................................................... 12

## Rule

Fed. R. Crim. P. 52(a) ............................................................... 17

## Sentencing Guideline

USSG § 4B1.1(b)......................................................................... 14

# STATEMENT OF JURISDICTION

Defendant Austin Kyle Lee appeals from a judgment of conviction following a jury trial. Jurisdiction to the district court was established by 18 U.S.C. § 3231.

Jurisdiction to this Court is provided by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The judgment was entered on June 15, 2021, and Defendant filed a timely notice of appeal in court.

## STATEMENT OF ISSUE

Whether the district court's error in not allowing the jury to consider the factual issues involved in the § 851 enhancement was harmless where the government proved at trial, undisputed by Defendant, Defendant's conviction, his length of imprisonment, and his date of release, and where the Court imposed a sentence clearly driven by the guidelines range, rather than the statutory structure.

## STATEMENT OF FACTS

### Procedural History

In December 2019, the grand jury indicted Defendant Austin Kyle Lee in a superseding indictment on conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and marijuana, in violation of 21 U.S.C. § 846 (Count One); three counts of distributing heroin, in violation of 21 U.S.C. § 841(a)(1) (Counts Two through Four); possession with intent to distribute 100 grams or more of heroin and quantities of marijuana and cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Five); possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Six); and felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g) and 924 (Count Seven). J.A. 38-41.

Counts One and Five also alleged a prior conviction, specifically that Defendant had "a final conviction for a serious drug felony for which he served more than twelve (12) months of imprisonment and from which he was released from serving any term of imprisonment related to that offense within fifteen years of commencement of the instant offense." J.A. 38–39, 40.

Defendant pled not guilty to each count of the superseding indictment. J.A. 18, Docket Entry 128. At trial, the jury convicted Defendant on all counts. J.A. 24, Docket Entry 186. The district court sentenced Defendant to a total of 340 months' imprisonment, followed by ten years' supervised release. J.A. 27, Docket Entry 232. Defendant timely appealed.

## Offense Conduct

In late 2015, Defendant was released from a New York state prison after serving almost five years for selling cocaine. J.A. 748–49. He transferred his post-release supervision to North Carolina, where he soon resumed selling drugs. J.A. 749; J.A. 1090 ¶ 13, 1094 ¶ 33.

Before long, law enforcement in Onslow County, North Carolina, began investigating Defendant's drug activity. J.A. 1090 ¶ 13. They learned Defendant distributed three grams of heroin on October 28, 2016, almost five grams of a heroin mixture on August 9, 2017, and about six grams of heroin on February 1, 2018, to three different people. J.A. 1090–91, ¶¶ 14–15, 17, 21. Defendant was still on post-release supervision. J.A. 624. Because of this, law enforcement knew Defendant's official residence. J.A. 623–24. By investigating that address, they learned Defendant was also maintaining the house next door. J.A. 628–32.

After the drug distribution on February 1, 2018, law enforcement obtained an arrest warrant for Defendant and search warrants for his official and unofficial residences. J.A. 635–46. All were executed the next day. J.A. 645–46. In searching the unofficial residence, law enforcement found: 159.7 grams of fentanyl-heroin mixture, 354.4 grams of cocaine, 110.6 grams of marijuana, three handguns (including one with an obliterated serial number), 117 rounds of ammunition, packaging material, and $210,767 in cash. J.A. 1091, ¶ 22.

While in custody. Defendant requested to speak with law enforcement. J.A. 1091, ¶ 23. In an hours-long video-recorded interview, Defendant described his drug dealing activities in the area in detail. J.A. 671; J.A. 1091, ¶ 23.

Specifically, he admitted to purchasing no less than 225 grams of heroin on at least 25 occasions (5,625 grams of heroin), no less than 200 grams of cocaine at least 100 times (20.2 kilograms of cocaine), and 1.75 pounds of marijuana. J.A. 1091, ¶ 23. He also admitted that the over $200,000 cash was from selling drugs. J.A. 1091, ¶ 23. He told law enforcement he had served about five years in New York for criminal sale of a controlled substance, specifically cocaine. S.J.A 1113. He acknowledged he was prohibited from possessing firearms because of this prior felony but admitted he had them to protect his family, drugs, and money. J.A. 1091, ¶ 23. He told law enforcement he excelled at selling drugs. J.A. 747.

## Section 851 Enhancement Notice and Argument

On January 20, 2021, the government filed a trial brief which detailed information concerning the Allegations of Prior Conviction. J.A. 52. The government's brief outlined the statutory bases for the sentencing enhancement, as well as its requirements. J.A. 52–53, 55–56. Specifically, the government would be required to prove: (1) that Defendant, before committing the offenses charged in Counts One and Five, was convicted of Criminal Sale of a Controlled Substance in the Second Degree under New York law (hereinafter "the New York conviction");[1] (2)  that Defendant served more than twelve months in prison for that

---

[1]  The brief argued that the legal conclusion as to whether this conviction was a serious drug felony was a matter of which the district court could take judicial notice. J.A. 65–67.

conviction; and (3) that Defendant was released from serving any term of imprisonment for that conviction within fifteen years of the commencement of the offenses charged in Counts One and Five (hereinafter referred to as the "§ 851 fact questions"). J.A. 53, 56. If these elements were proven, Defendant's imprisonment range for Count One would go from 10 years to life to 15 years to life; for Count Five, it would go from 5 to 40 years to 10 years to life. 21 U.S.C. §§ 841(b)(1)(A)–(B); 21 U.S.C. § 851.

The same day, the government filed its proposed jury instructions, which, for Counts One and Five, included the following:

1. Do you unanimously agree, by proof beyond a reasonable doubt, that before defendant AUSTIN KYLE LEE, also known as "JUSTIN," committed the offense charged in Count One [or Five], he was convicted of the crime of Criminal Sale of a Controlled Substance in the Second Degree under New York law? I instruct you as a matter of law that this offense is a serious drug felony.

2. If so, do you unanimously agree, by proof beyond a reasonable doubt, that he served than 12 months in prison for that crime?

3. If so, do you unanimously agree, by proof beyond a reasonable doubt, that he was released from serving any term of imprisonment for that crime within 15 years of the commencement of the offense charged in Count One [or Five]?

J.A. 161–62, 172–73.

Also on that day, the government filed a § 851 notice of its intent to seek an enhanced penalty based on Defendant's prior serious drug felony. J.A. 78–

83. It included relevant information about the prior conviction, including that it was punishable by ten years or more, that Defendant had served more than twelve months in custody, and that he was released within fifteen years of October 2016—the commencement date of the instant offense. J.A. 78–79. It included a copy of Defendant's prior conviction and certificate of incarceration. J.A. 81–82. The government had previously produced these records to defense counsel anticipating their entry at the upcoming trial as self-authenticating documents; there was no pre-trial objection. J.A. 61–63.

The district court heard argument on the matter. The government and Defendant agreed and asked the court, out of "an abundance of caution" to refer the § 851 fact questions to the jury to be found beyond a reasonable doubt, as they increased Defendant's sentencing exposure. J.A. 307–09. The district court denied the joint request. J.A. 790. Instead, it decided that it would hold a hearing after the verdict (if Defendant were convicted of Count One or Five) to determine whether Defendant would be subject to the enhanced penalties. J.A. 791.

## Trial

At trial, Defendant did not stipulate to his felon status, requiring the government to prove beyond a reasonable doubt that he knew he had been convicted of a crime punishable by more than twelve months in prison. J.A. 606.

Consequently, the government introduced Exhibits 83 and 84, without objection from Defendant. J.A. 605–09. Exhibit 83 was a certified copy of Defendant's 2011 New York conviction for criminal sale of a controlled substance in

the second degree. S.J.A. 1104–09. The New York conviction noted that Defendant was sentenced on October 31, 2011, to a term of six years' imprisonment. S.J.A. 1109. Exhibit 84 was a Certificate of Incarceration from New York which said Defendant was incarcerated on the New York conviction from January 10, 2011, until December 23, 2015, when he was conditionally released to parole. S.J.A. 1110.

Defendant's North Carolina probation officer testified that he came under her supervision based on the New York conviction. J.A. 612. She testified her supervision of Defendant began upon his release from imprisonment on that conviction in late December 2015, as seen in Government Exhibit 84. J.A. 612, S.J.A. 1110.

Also at trial, the government introduced clips from Defendant's interview. J.A. 670–75, 683–99. In one clip, Defendant stated he "did quite some time, like over five years" in prison. S.J.A. 1113; J.A. 698. In another, law enforcement asked, "you said you'd done some time in . . . New York in prison. What'd you do time for? You said about five years," to which Defendant replied, "criminal sale of a controlled substance." S.J.A. 1114; J.A. 698. When asked what the substance was, Defendant replied, "cocaine." S.J.A.1114; J.A. 698.

Defendant testified. J.A. 724–25. On direct examination, when asked how he knew the price of a gram of heroin, Defendant answered: "I have been in trouble before in previous years. I have, as the jury is aware, I have been incarcerated before . . . I have done some time previously to me moving to North

Carolina." J.A. 745. On cross examination, Defendant also discussed this conviction:

> [Government] Q: You got out of prison in New York at the end of 2015, right?
>
> [Defendant] A: Yes
>
> Q: After doing about five years for criminal sale of a controlled substance in the second degree?
>
> A: I did.
>
> Q: And that was for selling cocaine?
>
> A: Yes.

J.A. 725, 748–49.

In closing, the government summarized an exchange from the video interview, saying Defendant stated, "I'm a felon" and that he did "[f]ive years in prison" for "[c]riminal sale of a controlled substance." J.A. 840. When it was his turn, the defense attorney did not dispute these claims. Instead, he reiterated "[Defendant] told you he's got the conviction in New York, a conviction for selling drugs in New York." J.A. 852.

The jury convicted Defendant on all counts. J.A. 909–10. It was not instructed upon—so it did not decide—the § 851 fact questions. J.A. 916–61.

## § 851 Hearing and Order

The district court held a hearing on the § 851 fact questions two months after the trial. J.A. 962–74, 978–79. Before the hearing, Defendant filed a pro se

"denial and challenge" claiming, for the first time, that the New York conviction had been vacated. J.A. 975. The court denied it "due to defendant's continuing representation." J.A. 977, 989–90.

At the hearing, the government, relying on its trial brief and evidence, presented argument to each element of the Allegation of Prior Conviction. J.A. 980–82. First, it argued Defendant's prior conviction was a serious drug felony based on the conduct prohibited and the maximum sentence of ten years (up to fourteen). J.A. 981. For the second and third elements, the government relied on unchallenged Exhibit 84 to demonstrate that Defendant was in custody from January 2011 through December 2015, establishing that he served more than one year and was released within fifteen years. J.A. 981–82. It also referred to trial testimony from Defendant's probation officer and Defendant's own admissions that he was a felon who had done about five years for sale of cocaine. J.A. 982.

The government entered the entire New York conviction (a partial version had been admitted at trial) and incarceration records as hearing Exhibits A and B, respectively. J.A. 606, 982–83. In admitting these, the government noted that trial Exhibit 83 (hearing Exhibit A) had been obtained in January 2021, arguing this "would belie the idea that this conviction [wa]s somehow instable or ha[d] been expunged" in 2020, as Defendant claimed. J.A. 975, 982–83. The district court then asked the government if a copy of a conviction that had later been expunged could be obtained. J.A. 983. The government expressed its doubt that the conviction had been expunged and noted there was no indication of that

other than Defendant's "bald assertion." J.A. 983. The government also noted that the face of the conviction itself discussed limitations on use of certain expunged convictions, saying that it was unlawfully discriminatory to inquire about or use such convictions adversely. J.A. 983. The government argued that these restrictions would suggest "that there would be some sort of indication if you were inquiring or attempting to use an expunged conviction adversely." J.A. 983.

Having taken these into evidence, the district court inquired about Defendant's claim that the conviction had been vacated. J.A. 983. Defense counsel "persist[ed] in the position" but did not "have any documentation to show that the judgment was vacated." J.A. 984–85.

Defendant himself also told the district court he believed the government "erred in [its] assertions" that his New York conviction was punishable by up to ten years when the New York conviction showed he was sentenced to six years. J.A. 985–86. In response, the government explained that Defendant's particular sentence was up to six years but that the crime itself was punishable by up to ten or fourteen years. J.A. 986. The government further explained its task was not "to show that he was sentenced to more than ten years, just that this crime was so serious it could be punishable by up to and including ten years." J.A. 986.

Having considered the record, arguments, and evidence, the district court found "the government has carried its burden" on the § 851 fact questions, thus subjecting Defendant to enhanced penalties at sentencing. J.A. 986.

The district court then issued a written order. J.A. 988–94. It held that the government "proved . . . beyond a reasonable doubt" that "Defendant was convicted on July 11, 2011, in the Supreme Court of the State of New York, New York County for criminal sale of a controlled substance in the second degree in violation of N.Y. Penal Law § 220.41" and "served a term of imprisonment from sentencing on October 31, 2011, until December 23, 2015." J.A. 990. As a legal conclusion, the district court determined that Defendant's New York conviction qualified as a serious drug offense under 18 U.S.C. § 924(e)(2)(a)(ii) because it involved "distributing a controlled substance" and "the maximum term of imprisonment prescribed by law [was] 10 or more years." J.A. 991–93.

Having found Defendant qualified, the order also detailed the implications of enhanced penalties under § 851. For a defendant convicted of a violation subject to penalties under 21 U.S.C. § 841(b)(1)(A), such as Count One, the imprisonment range would increase from 10 years to life to 15 years to life. J.A. 991. For a defendant convicted of a violation subject to penalties under 21 U.S.C. § 841(b)(1)(B), such as Count Five, the imprisonment range would increase from 5 to 40 years to 10 years to life. J.A. 991.

The order then addressed Defendant's arguments. First, the district court considered Defendant's "bare assertion" that the New York conviction had been vacated. J.A. 993. It noted that this "was not elaborated upon at hearing by defense counsel or defendant, [and] no evidence was put forward to support this assertion, which was belied by Government's Exhibit A containing a certification of defendant's conviction, as certified as of January 15, 2021." J.A. 993

12

(citing generally *United States v. Sanders*, 909 F.3d 895, 902 (7th Cir. 2018) ("When a state court 'vacates' a prior conviction, it, in effect, nullifies that conviction; it is as if that conviction no longer exists."). Next, the district court considered Defendant's claim that he "was excepted from the penalty enhancement because he had not served a term of imprisonment of 10 years or more." J.A. 994. The district court held that "the plain language" of the relevant statutes "foreclose[d] this argument" because they concern the maximum term of imprisonment proscribed by law, "rather than referencing an offense under state law for which a term of imprisonment of ten years or more was served." J.A. 994.

The order concluded by stating "the government has shown, beyond a reasonable doubt, that under both § 841(b)(1)(A) and § 841(b)(1)(B) defendant is subject to the statutorily mandated increased punishment by reason of a prior conviction" and assured that "[a]t sentencing . . . the court shall impose sentence accordingly." J.A. 994.

### Presentence Investigation Report

Pursuant to the district court's order, the Presentence Investigation Report (PSR) listed Defendant's imprisonment ranges as 15 years to life on Count One and 10 years to life on Count Five. J.A. 1086–87.[2]

---

[2]  Defendant's statutory maximum was also increased on Counts Two through Four from not more than twenty years' imprisonment to not more than thirty years' imprisonment. J.A. 1086–87. These counts—charged under 21 U.S.C.

The PSR included Defendant's three adult drug convictions, including the New York conviction. J.A. 1093, ¶ 33. On that conviction, the PSR noted Defendant was "[s]entenced to 6 years custody" in October 2011 and "[r]eleased to post-release supervision" in December 2015. J.A. 1093, ¶ 33. For these convictions and because Defendant committed the charged offenses "while under a criminal justice sentence," his criminal history was a category V. J.A. 1094, ¶ 35–37.

The drug weight in the case determined Defendant's base offense of 32. J.A. 1098, ¶ 62. He received enhancements for maintaining a premises for the purpose of manufacturing or distributing a controlled substance and obstruction of justice, though the latter was removed by the district court at sentencing, leading to a final total offense level of 34. J.A. 1004, 1098, ¶¶ 63, 66. Consequently, Defendant's advisory guidelines range was ultimately 235 to 293 months, to be followed by five years consecutive for possessing a firearm in furtherance of a drug trafficking crime. J.A. 1005; J.A. 1099, ¶ 73. Other than this consecutive sentence under 18 U.S.C. § 924(c), the statutory penalties did not affect Defendant's guidelines range. *Cf.* U.S.S.G. §4B1.1(b) (using statutory maximum to determine base offense level for career offenders).

Defendant did not object to the information about the New York conviction contained in the PSR. J.A. 1102–03.

---

§ 841(b)(1)(C)—were still subject to the prior version of § 851, which required a mere "felony drug offense" and did not include the additional factual determinations. J.A. 42. Defendant has not objected to this.

14

**Sentencing Hearing**

At sentencing, the district court reminded Defendant of the § 851 hearing and that "the court[] determined that the defendant is subject to increased punishment by reason of prior convictions." J.A. 997.

The district court heard arguments on objections to the PSR and the 3553(a) factors before imposing a total sentence of 340 months' imprisonment: 280 months on Counts One through Five, concurrent, with 120 months concurrent on Count Seven and 60 months consecutive on Count Six. J.A. 998–1017.

# SUMMARY OF ARGUMENT

We concede that the district court erred in not instructing the jury on the § 851 fact questions, but this error was harmless.

First, the government proved beyond a reasonable doubt that Defendant had been convicted of criminal sale of a controlled substance, that he served more than one year in prison on that conviction, and that he had been released within fifteen years of the indicted conduct. This evidence came from a variety of sources, including the conviction and incarceration records themselves, testimony from Defendant's North Carolina probation officer, previous statements by Defendant, and Defendant's trial testimony. The veracity of this information was never challenged at trial.

Second, though he was subject to enhanced penalties under § 851, Defendant's sentence was driven by his guidelines range, not the statutory scheme. The guidelines range was determined by the drug weight in the case, so it was unaffected by § 851. Further, the district court's sentence was significantly above even the enhanced penalties, showing that they were not the determining factor.

Because any reasonable juror would have found Defendant guilty of the § 851 fact questions, and because the enhanced penalties ultimately did not impact Defendant's sentence, the district court's error in this case was harmless.

# ARGUMENT

**I.  The district court committed harmless error in refusing to send the § 851 fact questions to the jury because the evidence at trial that Defendant met the requirements was overwhelming and the ultimate sentence was driven by the guidelines.**

## A.  Standard of Review.

Generally, this Court reviews a district court's jury instructions for abuse of discretion. *United States v. Kivanc*, 714 F.3d 782, 794 (4th Cir. 2013). But, because Defendant preserved his objection at trial, this Court's review of the district court's decision not to instruct the jury on the § 851 fact questions is for harmless error. J.A. 307, 547; *Neder v. United States*, 527 U.S. 1, 7–9 (1999).

The harmless error rule requires that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). Aside from a "very limited class of cases" not applicable here, even constitutional errors—including failure to instruct the jury on an element of an offense at trial—are to be disregarded if "harmless beyond a reasonable doubt," such as when the "omitted element was uncontested and supported by overwhelming evidence." *Neder*, 527 U.S. at 7–8, 15–17 (internal citations and quotation marks omitted).

## B.  Discussion of Issue.

Had the jury been instructed on the § 851 fact questions, the outcome for Defendant would have been no different. As the uncontested trial evidence proved beyond a reasonable doubt, Defendant satisfied each of the § 851 fact questions and, thus, was rightly subjected to enhanced punishment as a result.

17

Further, Defendant's sentence was ultimately driven by his guidelines range, which was unaffected by the § 851 sentencing enhancements.

### 1.  The government proved each element of § 851 beyond a reasonable doubt.

The harmless error doctrine "recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . and promotes public respect for the criminal process by focusing on the underlying fairness of the trial." *Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986). This framework "reaches an appropriate balance between society's interest in punishing the guilty [and] the method by which decisions of guilt are made." *Neder*, 527 U.S. at 18 (internal quotation marks omitted) (alteration in original). In refusing to reverse a jury verdict for an error that "does not reflec[t] a denigration of the constitutional rights involved," the harmless error rule "block[s] setting aside convictions for small errors or defects that have little, if any, likelihood or having changed the result of the trial." *Id.* at 19 (alterations in original) (internal quotations omitted).

Omitting an element from jury instructions is evaluated under the harmless error rule because it is "simply an error in the trial process itself," rather than "a defect affecting the framework within which the trial proceeds." *See id.* at 8. Because such an omission is "[u]nlike such defects as the complete deprivation of counsel or trial before a biased judge," it does not "necessarily render a criminal trial fundamentally unfair." *Id.* at 9 (emphasis omitted). This is especially true when a defendant "was tried before an impartial judge, under the correct

standard of proof and with the assistance of counsel; [and] a fairly selected, impartial jury was instructed to consider all the of the evidence and argument in respect to [a defendant's] defense against the [] charges." *Id.*

So, when confronted with an omitted jury instruction, this Court asks: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Id.* at 18. To determine this, the reviewing court considers "whether the record contains evidence that could *rationally* lead to a contrary finding with respect to the omitted element." *Id.* at 19 (emphasis added). This analysis includes considering whether "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." *Id.* If not, having this Court "answer[] the question of whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of a jury trial guarantee." *Id.* Accordingly, "where a reviewing court concludes beyond a reasonable doubt that the omitted element[s were] uncontested and supported by overwhelming evidence . . . the erroneous instruction is properly found to be harmless." *Id.* at 17.

Here, Defendant was clearly guilty beyond a reasonable doubt of each of the § 851 fact questions, so the omitted jury instruction is utterly harmless. As required, the government proved he had been convicted of a serious drug felony, served at least one year in custody on it, and was released within fifteen years of the indicted conduct.

First, Defendant was guilty beyond a reasonable doubt of having been convicted of criminal sale of a controlled substance. Whether this conviction

19

was a "serious drug felony" was decided by the district court as a legal conclusion, and Defendant does not dispute this procedure. J.A. 991–93; Brief at 10. The question for the jury, then, should have been whether Defendant had been convicted of the New York conviction. The evidence in support of this fact was plentiful and uncontested at trial. As a foundational matter, the government introduced Defendant's actual criminal conviction for this offense. J.A. 609; S.J.A. 1104–09. Defendant did not object. J.A. 609. Further, the government solicited testimony from his North Carolina probation officer confirming that he was under her supervision based on that conviction. J.A. 612. Defendant did not object. J.A. 612. Beyond that, the government played clips from Defendant's video interview in which he specifically admitted to having been convicted of "[c]riminal sale of a controlled substance." S.J.A. 1114. Defendant argued portions of the video were unreliable, but he did not undermine the veracity of this particular information. *E.g.,* J.A. 743–44, 845. Further, Defendant testified that he had been convicted of criminal sale of a controlled substance for selling cocaine. J.A. 749. And, of course, the jury found beyond a reasonable doubt that Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year. J.A. 41; J.A. 961.

As to the remaining two questions of whether Defendant served more than a year in custody for the New York conviction and whether he was released within fifteen years of the instant offense, a similar pattern holds. The government introduced—without objection—Defendant's incarceration record for the

New York conviction. J.A. 609. This uncontested document indicated Defendant was incarcerated from January 2011 to December 2015—just shy of five years and ending well within fifteen years of the start of the indicted conduct. J.A. 38, S.J.A. 1110. Further, Defendant's North Carolina probation officer confirmed he was released from the New York conviction in late 2015. J.A. 612. And again, Defendant told the jury himself—twice. First, in the recorded video interview, Defendant admitted to law enforcement he did "quite some time, like over five years" in prison. S.J.A. 1113. Then, when asked on cross examination whether he did about five years for criminal sale of a controlled substance before being released in late 2015, Defendant answered "I did." J.A. 749.

Because the harmlessness inquiry centers on what the trial jury would have done, the reviewing court need not consider any material not submitted to the jury. *Neder*, 527 U.S. at 18. Accordingly, this Court can disregard that, *after* trial, Defendant filed a pro se notice to the district court claiming—for the first time—that the New York conviction had been vacated based on a motion filed in July 2020. J.A. 975.

However, should this Court consider it, it does not change the harmlessness calculus. At the § 851 hearing, Defendant's attorney persisted in Defendant's assertion but admitted they did not have any documentation to support it. J.A. 984–85. Indeed, to this day, Defendant has not produced any support of this claim. Brief at 15. To the contrary, the government *did* have evidence to support that the conviction appeared unaltered. J.A. 982–83. For these reasons, the district court easily dispatched Defendant's claim, finding "beyond []his bare

assertion, which was not elaborated upon at hearing by defense counsel or defendant, no evidence was put forward to support this assertion, which was belied by government's Exhibit A containing a certification of defendant's conviction, as certified as of January 15, 2021." J.A. 993. This factual finding that the New York conviction was never vacated is well-supported as explained and subject to considerable deference by this Court. *See United States v. Bell*, 884 F.3d 500, 507 (4th Cir. 2018) ("a reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed."). For all these reasons, this last-ditch, unsupported, judicially-rejected assertion that Defendant's conviction was vacated hardly amounts to "evidence sufficient to support a contrary finding" if the Court considers it at all, which it need not do. *Neder*, 527 U.S. at 19.

### 2. The guidelines range, not the enhanced penalties, drove Defendant's sentence.

Further, though the statutory minimums and maximums were increased, there is no indication that these changes impacted the sentence in this case. If the record is clear that there would be no change to a sentence upon remand, there is no harm to Defendant. *See United States v. Hargrove*, 701 F.3d 156, 162 (4th Cir. 2012) (applying assumed error harmlessness inquiry to guidelines sentencing issue).

Section 851 increased Defendant's penalties for Count One from 10 years to life to 15 years to life. 21 U.S.C. §§ 841(b)(1)(A)–(B), 851. The Count Five penalties went from 5 to 40 years to 10 years to life. 21 U.S.C. §§ 841(b)(1)(A)–

(B), 851. Counts Two through Four were only impacted by the old, uncontested § 851, which increased their maximum penalty from 20 years to 30 years. 21 U.S.C. § 841(b)(1)(C). For each of these counts, Defendant was sentenced to 280 months' imprisonment. J.A. 1027. Defendant's sentence was one hundred months over the increased mandatory minimum on Count One and one hundred and sixty months over the increased mandatory minimum on Count Five. Perhaps most tellingly, he was given the same 280-month sentence on the counts for which there was no mandatory minimum at all (Counts Two through Four).

Defendant's sentence was within the guidelines range, which was chiefly determined by the drug weight in the case. J.A. 1098, ¶ 62. For all these reasons, it is apparent that, in the end, this was a sentence driven by the guidelines, not the statutory scheme. Given that, there is no reason to think a resentencing with lower statutory penalties but no change to the guidelines would change Defendant's sentence.

At trial, the government provided official records, fact witness testimony, previous interview answers from Defendant, and sworn testimony from Defendant himself regarding the § 851 fact questions. It is difficult to imagine *more* overwhelming evidence of guilt. Because this evidence easily amounts to proof beyond a reasonable doubt—and because there is no indication the increased penalties actually had any impact on Defendant's sentence—the district court's refusal to instruct the jury on the issue amounts to harmless error.

## II.   *Almendarez-Torres* is still good law.

This Court cannot overrule a decision of the Supreme Court of the United States. The Supreme Court decided *Almendarez-Torres v. United States* in 1998 and has not reversed it. 523 U.S. 224 (1998). Accordingly, as Defendant recognizes, it is binding on this Court. Brief at 22.

Further, as discussed above, even if the district court relied upon inappropriate sources in making its decision on the § 851 fact questions, the error was harmless because the evidence of Defendant's guilt was overwhelming and did not determine the actual sentence.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the United States respectfully submits that the conviction should be affirmed.

Respectfully submitted, this 2nd day of March, 2022.

DANIEL P. BUBAR
*Attorney for the United States*
*Acting under Authority Conferred*
*By 28 U.S.C. § 515*

BY:   */s/ Lucy Partain Brown*
LUCY PARTAIN BROWN
*Assistant United States Attorney*
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601
Telephone: 919-856-4530

DAVID A. BRAGDON
*Assistant United States Attorney*

*Of Counsel*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this brief meets the page or type-volume limits of Rule 32(a) because, exclusive of the portions of the document exempted by Rule 32(f), this brief contains:

    ☒   <u>  25  </u>   Pages *(may not exceed 30 pages for a principal brief or 15 pages for reply brief, pursuant to Rule 32(a)(7)(A))*; or

    ☐   <u>        </u>   Words *(may not exceed 13,000 words for a principal brief or 6,500 words for reply brief, pursuant to Rule 32(a)(7)(B)).*

2.  Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 2016 using fourteen-point *Calisto MT*, a proportional-width typeface.

<u>*/s/ Lucy Partain Brown*   </u>
LUCY PARTAIN BROWN
*Assistant United States Attorney*