No. 21-4299

In the

# United States Court of Appeals
## For the Fourth Circuit

———————

UNITED STATES OF AMERICA,

*Appellee,*

v.

AUSTIN KYLE LEE,

*Appellant.*

———————

On Appeal from the United States District Court
for the Eastern District of North Carolina
Honorable Louise Wood Flanagan, District Judge;
Honorable Robert T. Numbers, II, Magistrate Judge;
Case No. 7:18-cr-153-FL

———————

**REPLY BRIEF OF APPELLANT**

———————

| | | |
|---|---|---|
| Nicholas J. Giles | Sean A. McClelland | Arin Melissa Brenner |
| George E. Rudebusch | MCGUIREWOODS LLP | OFFICE OF THE FEDERAL |
| MCGUIREWOODS LLP | 888 16th Street N.W. | PUBLIC DEFENDER |
| Gateway Plaza | Suite 500 | 210 First Street NW |
| 800 East Canal Street | Black Lives Matter Plaza | Suite 400 |
| Richmond, VA 23219 | Washington, DC 20006 | Roanoke, VA 24011 |
| T: (804) 775-4760 | smcclelland@mcguirewoods.com | arin_brenner@fd.org |
| F: (804) 698-2040 | | |
| ngiles@mcguirewoods.com | | |
| grudebusch@mcguirewoods.com | | |

*Counsel for Appellant Austin Kyle Lee*

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................2

I.     Mr. Lee contested the elements and the jury could have rationally found in his favor on them. ............................................3

II.    The unconstitutionally-set mandatory minimums necessarily affected Mr. Lee's sentence. ..........................................................7

CONCLUSION ...................................................................................................11

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alleyne v. United States*,
　570 U.S. 99 (2013).................................................................................. 2, 9-10

*Dallas/Ft. Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*,
　819 F.3d 245 (5th Cir. 2016) ...........................................................................6

*Jacobs v. N.C. Admin. Office of the Courts*,
　780 F.3d 562 (4th Cir. 2015) ...........................................................................6

*Neder v. United States*,
　527 U.S. 1 (1999).............................................................................................2

*Old Chief v. United States*,
　519 U.S. 172 (1997).........................................................................................4

*Salazar v. Lubbock Cnty. Hosp. Dist.*,
　982 F.3d 386 (5th Cir. 2020) ...........................................................................6

*Tolan v. Cotton*,
　572 U.S. 650 (2014).........................................................................................6

*United States v. Catone*,
　769 F.3d 866 (4th Cir. 2014) ...........................................................................2

*United States v. Guerrero-Jasso*,
　752 F.3d 1186 (9th Cir. 2014) ..................................................................... 2-3

*United States v. Hargrove*,
　701 F.3d 156 (4th Cir. 2012) ...........................................................................8

*United States v. Hernandez*,
　906 F.3d 1367 (11th Cir. 2018) .......................................................................4

*United States v. Hunt*,
　656 F.3d 906 (9th Cir. 2014) .................................................................. 2-5, 7

*United States v. Ingram*,
　613 F. Supp. 2d 1069 (N.D. Iowa 2009) .........................................................5

*United States v. Lewis*,
  802 F.3d 449 (3d Cir. 2015) ....................................................................... 1, 9-10

*United States v. Newbold*,
  791 F.3d 455 (4th Cir. 2015) ............................................................................ 8-9

*United States v. Redfern*,
  142 F. App'x 673 (4th Cir. 2005) ........................................................................ 6

*United States v. Turrentine*,
  400 F. App'x 791 (4th Cir. 2010) ........................................................................ 6

*United States v. Walker*,
  No. 2:18-CR-37-FL-1, 2019 WL 4412909 (E.D.N.C. Sept. 13, 2019) ................ 4

*United States v. Wheeler*,
  886 F.3d 415 (4th Cir. 2018) ..................................................................... 2, 8-10

## INTRODUCTION

The government concedes that the district court deprived Mr. Lee of his constitutional right to have a jury decide the elements of his crime of conviction. That concession is well placed. The district court committed a classic *Apprendi* error by conducting its own factfinding about Mr. Lee's prior conviction en route to enhancing his mandatory minimums. In doing so, it effectively sentenced Mr. Lee to a crime he wasn't convicted of.

Contrary to the government's suggestions otherwise, that error was not harmless. Rather, it affected *both* Mr. Lee's conviction *and* his sentence. The government's chief aim with its brief is to convince this Court that Mr. Lee's attempts to contest his First Step Act enhancement are meritless. But as another Court of Appeals has aptly cautioned, that tack just double-downs on the error:

> The motivating principle behind *Apprendi* and *Alleyne* is that judges must not decide facts that change the mandatory minimum or maximum; juries must do so. If we affirm because the evidence is overwhelming, then we are performing the very task that *Apprendi* and *Alleyne* instruct judges not to perform.

*United States v. Lewis*, 802 F.3d 449, 458 (3d Cir. 2015) (en banc). Mr. Lee contested the elements of his enhancement and offered evidence to support his assertion that it should not apply. The district court—not the jury—weighed that evidence and ruled against him. And that ruling bound the sentence Mr. Lee could receive. His sentence should be vacated, and the matter remanded for resentencing.

1

## ARGUMENT

The government tries to whitewash the district court's obvious (and conceded) constitutional error by claiming that the error was harmless. It was not. For an *Apprendi* error to be harmless, "the omitted element" must have been both "uncontested" by the defendant "and supported by overwhelming evidence." *United States v. Catone*, 769 F.3d 866, 874 (4th Cir. 2014) (quoting *Neder v. United States*, 527 U.S. 1, 17 (1999)). The elements omitted from jury consideration here—the actual-length-of-imprisonment and the release-to-instant-offense determinations— were neither. *See United States v. Guerrero-Jasso*, 752 F.3d 1186, 1193–95 (9th Cir. 2014); *United States v. Hunt*, 656 F.3d 906, 915–16 (9th Cir. 2014). Had they been at play during trial, Mr. Lee could have—and would have—disputed them vigorously. The jury could have found in his favor on them.

And even setting aside what could have happened at trial, the use of unconstitutionally-set mandatory minimums plainly affected the sentence Mr. Lee received. Because the applicable minimum necessarily impacted the district court's choice of sentence, *Alleyne v. United States*, 570 U.S. 99, 112 (2013), there is "no merit" to denying resentencing here, *United States v. Wheeler*, 886 F.3d 415, 431 (4th Cir. 2018). The government's position to the contrary should be roundly rejected.

2

## I.  Mr. Lee contested the elements and the jury could have rationally found in his favor on them.

The government's argument fails out of the gate because the elements were not "uncontested." That much is obvious because, when they were actually at issue, Mr. Lee contested them. JA 984–85; *see also* JA 975–76. That alone dooms application of the harmless error doctrine. *See Guerrero-Jasso*, 752 F.3d at 1193–95 ("By objecting to the" government's evidence "as inauthentic and incomplete, Guerrero-Jasso challenged the government's basis" for his enhancement, such that the evidence "cannot . . . be described as 'uncontroverted.'"); *Hunt*, 656 F.3d at 915 (concluding that an *Apprendi* error "was not harmless because Hunt . . . expressly contested the facts at issue").

The government nonetheless quibbles that Mr. Lee did not contest the elements *at trial*. Gov't Br. 20–21. But of course he didn't. The elements weren't at issue then. The district court had repeatedly rejected the parties' requests to submit the actual-length-of-imprisonment and release-to-instant-offense questions to the jury. JA 306–11; JA 540–52; JA 790. So there was no point in saying anything about those elements at trial. *See Guerrero-Jasso*, 752 F.3d at 1195 ("[W]e reject the government's suggestion that a defendant . . . has an affirmative obligation to introduce evidence post hoc to defeat the government's harmlessness argument.").

In fact, there was strong reason *not* to discuss those elements in front of the jury. As any defense attorney worth her salt will tell you, drawing attention to a

3

prior conviction in any way, shape, or form risks stirring up unfair prejudice against a defendant. *Old Chief v. United States*, 519 U.S. 172, 185 (1997) ("[T]here can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant."). All the more so here, where that risk would have been compounded by the near certainty that probing these questions would have distracted the jury from the actual matters on the verdict form. Nothing about harmless error doctrine requires a defendant to make a hash of things, let alone needlessly prejudice himself, in front of the jury.

Had the relevant questions been at issue during trial, however, Mr. Lee could have challenged the government's evidence in various ways—thereby proving that the evidence the government relies on was not "overwhelming." Naturally, Mr. Lee could have presented the same arguments to the jury that he actually made during the § 851 hearing. JA 984–85. But he also could have done more. He could have cross-examined witnesses and presented his own evidence. *Hunt*, 656 F.3d at 916. He could have more vigorously opposed the government's submissions.[1] *Id.* And

---

[1] In fact, Mr. Lee would have had also stronger arguments to *exclude* the government's evidence at trial than he had at the § 851 hearing—at least in front of this district court. The court below has previously expressed its view that § 851 hearings are not subject to the Federal Rules of Evidence (thereby adopting the minority position on the subject). *See United States v. Walker*, No. 2:18-CR-37-FL-1, 2019 WL 4412909, at *5 (E.D.N.C. Sept. 13, 2019) (citing with approval *United States v. Hernandez*, 906 F.3d 1367, 1370 (11th Cir. 2018) (concluding that the Rules of Evidence do not apply at § 851 hearings because they are "miscellaneous

4

Mr. Lee himself could have taken the stand and testified as to the subsequent history of his New York conviction. *Id.* The jury could well have credited any or all of Mr. Lee's positions on these issues, and thereby could have rationally found in his favor on the contested elements.

That's particularly true when one zeroes in on the specific argument Mr. Lee raised as to why the relevant elements were unsatisfied: that his New York conviction was vacated such that he never served a valid term of imprisonment in the first place. JA 975–76; JA 984–85. Absolutely *nothing* about the evidence the government cites on appeal—all of which presupposes a valid conviction—disproves Mr. Lee's contention on that front. *See* SJA 1110–12 (silent on vacatur); JA 612 (same); SJA 1113–16 (same); JA 749 (same). Mr. Lee could have testified about the vacatur at trial and the jury could have credited his testimony, concluding that the government failed to meet its burden. Indeed, provided the jury found him credible, it would have had no reason not to.

Nor can the government duck that result by handwaving away Mr. Lee's position as a "last-ditch, unsupported, judicially-rejected assertion." Gov't Br. 22.

---

proceedings akin to sentencing hearings" under Rule 1101(d)(3))); *cf., e.g.*, *United States v. Ingram*, 613 F. Supp. 2d 1069, 1093–94 (N.D. Iowa 2009) (holding that § 851 hearings are subject to the Rules of Evidence).

The upshot: Mr. Lee's trial counsel would have had additional evidentiary tools at his disposal absent the *Apprendi* error—tools that he may have pointedly declined to use in the at-issue proceedings because the district court decided to answer the elements itself.

5

True, the district court did not credit Mr. Lee's position, and the government plainly doesn't either. But a jury obviously could have, and a jury is the *only* relevant decisionmaker under the Sixth Amendment. Even if there was something inherently bare or self-serving about Mr. Lee's position (there was not), bare and self-serving statements—even ones that a judge wouldn't buy—can nonetheless create triable issues of fact.[2] Indeed, bare, self-serving statements can be enough to *convict* a defendant. *See, e.g.*, *United States v. Turrentine*, 400 F. App'x 791, 793 (4th Cir. 2010) (per curiam); *United States v. Redfern*, 142 F. App'x 673, 674 (4th Cir. 2005) (per curiam). In the hands of the jury, such statements can be "substantial evidence." *Redfern*, 142 F. App'x at 674. Plainly, Mr. Lee's position could have been given that weight by the jury had the *Apprendi* error not taken it off the table at trial.

---

[2] *See Tolan v. Cotton*, 572 U.S. 650, 660 (2014) (per curiam) (concluding that bare, self-serving testimony created triable issues, summarily vacating grant of summary judgment that disregarded such bare, self-serving testimony, and emphasizing that evaluating a witness's "own perceptions, recollections, and even potential biases" is a central reason why "genuine disputes are generally resolved by juries in our adversarial system"); *see, e.g.*, *Dallas/Ft. Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir. 2016) (rejecting as "meritless" the contention that "self-serving" testimony cannot create triable fact issues); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (concluding that self-serving testimony created triable fact issues and reversing grant of summary judgment that ignored that testimony); *see also Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 392 (5th Cir. 2020) (Ho, J., concurring) ("The mere fact that a statement is self-serving does not reduce its value or make it unworthy of consideration.").

6

Indeed, Mr. Lee's vacatur assertion puts him head-and-shoulders above the baseline for rejecting harmlessness. Defendants can get (and have gotten) their sentences vacated on issues that were "never litigated" simply because they "could have" been raised during trial had they been at play. *Hunt*, 656 F.3d at 915–16. Mr. Lee's position is even stronger. At the § 851 hearing, Mr. Lee *actually* litigated the vacatur point. So the jurors should have been asked to resolve it. They could have believed him. *Id.* And if they did, the lynchpin assumption underlying the government's position on the actual-length-of-imprisonment and the release-to-instant-offense determinations—that Mr. Lee's conviction remained valid—would have been wiped away. The government is not without an argument that the mandatory minimum enhancement should apply, of course. But that is not the same thing as presenting evidence that is both "uncontested" and "overwhelming."

Mr. Lee contested the relevant elements. And a jury could have found in his favor. The error was not harmless at trial. This Court should vacate and remand for resentencing.

## II. The unconstitutionally-set mandatory minimums necessarily affected Mr. Lee's sentence.

The failure to submit these issues to the jury also necessarily affected Mr. Lee's sentence. That effect was plain; the error resulted in erroneously-calculated mandatory minimums at sentencing.

7

The government nonetheless insists that the district court's imposed sentence cleansed its *Apprendi* error on these issues. Gov't Br. 22–23. The government's claim is draconian in its circularity: per the government, a court can paper over its failure to have the jury resolve elements defining the range of statutorily-permissible sentences just by imposing a higher sentence from the jump. *Id.* And so (says the government) Mr. Lee must lose on harmlessness because the district court bound itself to the wrong statutory framework and then issued a *harsher* sentence using that unconstitutionally-heightened frame. *Id.*

That can't be right. And fortunately, it isn't. The specific *Apprendi* issue in this case—using an unconstitutionally-increased mandatory minimum—*cannot* be made harmless by sentencing. The reason is simple. Using an unconstitutionally-determined mandatory minimum constitutes a "fundamental problem with an incorrectly designated statutory sentencing benchmark." *Wheeler*, 886 F.3d at 431. And using the wrong benchmark necessarily yields the wrong sentence. It gives the district court the "mistaken impression" about the range of permissible sentencing options.[3] *Id.* (quoting *United States v. Newbold*, 791 F.3d 455, 460 n.6 (4th Cir.

---

[3] The government's lone case on sentencing deals only with (non-constitutional) guidelines issues and so does not (and cannot) cut against the fact that courts have *no* discretion to deviate from statutory frameworks. *See United States v. Hargrove*, 701 F.3d 156, 162 (4th Cir. 2012) (addressing only guidelines calculations issues). That lack of discretion on statutory mandatories undoubtedly affects a sentencing calculus, as the cases cited above and below make clear.

8

2015)). So resentencing is in order even if the defendant theoretically "could have been assigned the same sentence even with the correct mandatory minimum." *Id.*

For good reason. Mandatory minimums bound a sentencing judge's calculus—even when the judge ultimately imposes a sentence within the discretionary sentencing guidelines. So much so that it is "impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime." *Alleyne*, 570 U.S. at 112. And lowering that floor has obvious consequences: it "expand[s]" the district court's "statutory discretion" to issue a shorter sentence. *Wheeler*, 886 F.3d at 431. So the court must be directed to reevaluate the sentence when the minimum-floor moves. *Id.*

Far from harmless-by-sentencing, then, the error here was *given effect* by the imposed sentence. That much is confirmed by this Court's conclusion that this type of error forms a "fundamental defect" warranting post-conviction relief under the extremely restrictive requirements of § 2255's savings clause. *Id.* It's also well-supported by other federal authority: the en banc Third Circuit, for instance, has acknowledged that a lower mandatory minimum absent an *Apprendi* error justifies sentence vacatur under harmless error review—the very issue here. *Lewis*, 802 F.3d at 458 (concluding that the government failed to prove harmlessness because the defendant would have had faced a shorter mandatory minimum absent the *Apprendi* error). And it's plain that Mr. Lee's case falls well in line with those authorities; the

9

unconstitutional minimum-enhancements here tacked on *five years* to the relevant minimums, a clear shift in the framework. *See id.* (vacating on only a two-year change to minimums); *Wheeler*, 886 F.3d at 431 (vacating sentence because the district court's error "double[d]" the statutory minimum by adding five years). The possibility of a lower sentence in light of different mandatory minimums *requires* resentencing.

Moreover, there can be no doubt that this rule—that erroneous mandatory minimums matter—holds true on the facts of this case. The district court sentenced Mr. Lee to a sentence at the high-end of the guideline range on what it perceived to be the severity of his statutory violation—a fact inextricable from the mandatory minimums the district court unconstitutionally applied. *See* JA 1005 (identifying the range as 235 to 293 months on Counts One through Five); JA 1017 (sentencing Mr. Lee to 280 months on those counts); *see generally Alleyne*, 570 U.S. at 112. And the district court left other markers to suggest that the minimums played a role, too—most notably, the court pointedly did *not* say that its sentence would have been the same had it not committed the *Apprendi* error. *See* JA 1017–21. There is, in short, no reason to deviate from the undisputable rule that mandatory-minimum-enhancing errors affect sentencing.

The government's harmlessness-by-sentencing arguments are flat wrong. Resentencing is necessary here.

10

## CONCLUSION

For the foregoing reasons, Mr. Lee respectfully requests that the Court enter an Order vacating the sentence imposed by the district court and remanding for resentencing within constitutional limits.

Dated: March 25, 2022

/s/ Nicholas J. Giles

Nicholas J. Giles
George E. Rudebusch
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4760
F: (804) 698-2040
ngiles@mcguirewoods.com
grudebusch@mcguirewoods.com

Sean A. McClelland
MCGUIREWOODS LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
smcclelland@mcguirewoods.com

Arin Melissa Brenner
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
210 First Street NW
Suite 400
Roanoke, VA 24011
arin_brenner@fd.org

*Counsel for Appellant Austin Kyle Lee*

11

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(A) because it contains fewer than 15 pages, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word, in 14-point size Times New Roman font.

> /s/ Nicholas J. Giles
> Nicholas J. Giles
>
> *Counsel for Appellant*
> *Austin Kyle Lee*

## CERTIFICATE OF SERVICE

    I hereby certify that on March 25, 2022, I filed the foregoing with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

<u>*/s/ Nicholas J. Giles*</u>
Nicholas J. Giles

*Counsel for Appellant*
*Austin Kyle Lee*

13